SUMMERS, Justice.
This case is before us on writ of certiorari or review issued to the Third Circuit, 245 So.2d 551, on application of Freda W. Hickman, individually and on behalf of her minor son, David Michael Iles. 258 La. 771, 247 So.2d 866.
Freda W. Hickman instituted this suit for and on behalf of her minor son, David Michael lies, to recover damages for personal injuries he sustained in a motorcycle-truck accident. She also seeks recovery for medical expenses, past and future, 'and for damages to the motorcycle her son was riding at the time of the accident in question.
*109 It was a clear day on May 23, 1968, about 11:15 a. m., when Robert Allen Fowler, driving a 1956 two-ton Chevrolet van truck, entered the parking 'area or driveway in front of Kern’s Sporting Goods Store in the town of DcRidder. The driveway led into U. S. Highway 171, a two-lane concrete highway running in a north-south direction.
Fowler backed his truck to the store to make a delivery of freight he was hauling from the Southern Pacific freight depot. When the delivery was completed he proceeded forward in a westerly direction the ahort distance to the highway, intending to enter that thoroughfare and turn left into the southbound lane of travel. When he reached a point about three feet from the traveled portion of the highway’s eastern or northbound lane he stopped.
At this time two 17-year-olds, Van Owen Fletcher 'and David Michael lies, who were riding motorcycles, approached the site where the truck was stopped. They were traveling in the eastern or northbound lane of Highway 171. Fletcher was traveling near the center line while lies was to his right and slightly to the rear.
As they approached the truck they saw it stop, and they surmised the driver would permit them to pass by before entering the highway. However, when they reached a point approximately fifty-five feet from .the truck, Fowler, thinking he could maneuver into the southbound lane before the motorcycles arrived, darted into the highway. Seeing that his actions endangered the passage of the motorcycles and that he could not accomplish his maneuver in time, Fowler stopped the truck abruptly crosswise in the highway, partially blocking both the northbound and southbound lanes.
Faced with the truck’s sudden entry into the highway Fletcher veered sharply to the left in an effort to avoid a collision by going around the front end of the truck. At the same time lies also turned sharply to the left in an attempt to avoid a collision by following Fletcher. But his position in relation to Fletcher’s vehicle and the truck, and their rate of travel, effectively boxed him in. In making his turn, therefore, the front wheel of his motorcycle unavoidably struck the rear wheel of Fletcher’s motorcycle and lies lost control. His motorcycle then fell and slid into the front wheel of the truck. lies was thrown to the concrete highway, as a result of which he sustained serious injuries. Fletcher’s motorcycle careened into the ditch in front, of the truck where it came to an abrupt stop. Fletcher was not injured.
This suit w'as instituted by lies’ mother against Fowler, the driver of the truck, and Southern Pacific Transport Company, alleging that Fowler was an employee of Southern Pacific Transport Company. Recovery was denied by the trial court on the finding that lies was guilty of contributory *111 negligence. This finding was 'affirmed by the Court of Appeal. 245 So.2d 551. We reverse.
. The facts of this case unmistakably support a finding of Fowler’s fault. His action in driving his van truck from a private driveway into a main thoroughfare, a favored highway, in the path of the oncoming motorcycles, blocking and obstructing free passage in both lanes of travel, was a clear violation of the duty Fowler owed to motorists traveling on Highway 171.
The pertinent duty and standard of conduct [1] is established by Section 124 of Title 32 of the Revised Statutes as follows:
The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.
Thus Fowler must repair the damage caused to Freda W. Hickman and her son (La.Civil Code art. 2315), unless lies’ conduct was so careless and negligent that his fault contributed to his injury barring recovery from Fowler. La.Civil Code art. 2316.
 As Fletcher and lies approached the scene of the accident, they were traveling about 35 or 40 miles per hour, within the permissible speed limit at the locality. They were attentive to the road ahead and observed Fowler’s van at the side of the highway. It was reasonable for them to conclude, under the circumstances, that Fowler would accord to them the right of way to which they were entitled. It was Fowler’s untimely decision to enter the highway, in violation of the standard prescribed by statute (La.R.S. 32:124), which was the proximate cause of the ensuing collision and injury.
We do not agree with the finding of the Court of Appeal that lies’ action in swerving to the left to avoid the truck obstructing his passage and then striking the rear of Fletcher’s- motorcycle was negligence.
It is suggested that lies might have swerved to the right instead, into the wide driveway from which the truck had just emerged, and, by so doing, bypass the obstructing truck. But we do not agree that lies’ judgment and actions were unreasonable, negligent or faulty.
One who suddenly finds himself in a position of imminent peril, without *113 sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. This rule for testing the standard of care imposed by law upon actors in a tort situation has been applied by this Court in Dane v. Canal Insurance Co., 240 La. 1038, 126 So.2d 355 (1961), and Commercial Standard Insurance Co. v. Johnson, 228 La. 273, 82 So.2d 8 (1955). The principle embodied in this rule enjoys almost universal acceptance in the courts of the nation, founded as it is upon common sense and a proper recognition of prudent standards in human conduct. 65A C.J.S. Negligence § 123; 57 Am.Jur.2d, Negligence, § 90. The rule applies to the defendant’s as well as the plaintiff’s conduct; it is, therefore, appropriate in a consideration of fault as it bears upon contributory negligence.
 Applying the doctrine of sudden emergency to lies’ conduct, we conclude that his decision was brought on by an emergency created by Fowler’s rash action in darting into the highway from the private driveway obstructing the free passage to which lies was entitled. When lies was confronted with the emergency thus created, his choice, if wanting in refined judgment at the time, did not constitute negligence. Negligence is not established simply because a subsequent review of the facts may indicate, upon cool reflection, that a more deliberate choice may have suggested a safer course of action. It was reasonable for lies to act as he did in the face of the sudden emergency. lies was not, therefore, contributorily negligent.
This brings us to plaintiff’s contention that Fowler was an employee of Southern Pacific Transport Company at the time of the accident. Judgment is sought against both in solido, based upon Fowler’s negligence and the theory that employers are responsible for the damages caused by the negligence of their employees while acting in the course and scope of their employment. Article 2320 of the Civil Code is relied upon. The facts and the law support the contention as opposed to Southern Pacific Transport’s defense that Fowler was an independent contractor.
Fowler understood that he was working for Southern Pacific Transport. He had been so occupied for ten or twelve years. Other than opening graves for a local funeral home after working hours, he worked only for Southern Pacific Transport. He made deliveries of freight from the railroad depot to the addressees, obtained signatures to delivery receipts, collected the freight charge and remitted the collections to the agent at the Southern Pacific depot, tie also made pickups of freight which he *115 transported to the freight depot for shipment by Southern Pacific Transport.
His work was routine. Pie was required to report at the depot at eight o’clock each mórning. As the freight trucks arrived from other towns, Fowler assisted in ttnloading into the warehouse. lie then obtained bills of lading from the agent, loaded his truck and made deliveries. The agent also received orders from customers for pickups which he transmitted to Fowler.
The van truck used in the operation was owned by Fowler. Liability insurance was maintained on the truck by Fowler until shortly before this accident. The policy was cancelled because of his inability to make the premium payments. The truck was unmarked except far his name on the door. Although Fowler was required to maintain his truck, and make all repairs, he was able to buy parts at a discount through the company.
He was required to do some paper work in the office. Fowler was told by a company official to keep the warehouse clean, and he customarily swept it out when the freight was removed. His work was supervised to a considerable extent by the agent who often required that Fowler follow his direction as to the order of pickups and deliveries, depending upon whether the freight was C.O.D. or rush.
At the time of the accident he was making deliveries daily. Pie was paid by check once a month.
Commencing about 1955 he sigtied three or four contracts with Southern Pacific Transport. Although he could read and write to some extent, he testified that he signed these contracts without reading them.
The contract signed by Fowler provided for the payment of 20 cents per hundredweight on the first 30,000 pounds of freight handled and 15 cents per hundredweight for all over 30,000 pounds handled by Fowler each month. By the terms of the contract the cost of cargo insurance which Fowler authorized Southern Pacific Transport to procure for him was deductible from the amounts due to him. No other deductions were made from Fowler’s monthly checks, such as Social Security or withholding income tax. The contract was not assignable by Fowler without the consent of Southern Pacific Transport. The agreement was to continue in effect for a term of one month and thereafter until terminated by either party on thirty days notice; provided that Southern Pacific Transport reserved the right to terminate the contract at any time Fowler’s services were unsatisfactory to Southern Pacific Transport.
The legal relationship between Fowler and Southern Pacific Transport is to be determined from the contract between them and from their intentions in establishing and carrying out that relationship as manifested in its performance and the surrounding circumstances.
*117 It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor’s business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955).
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. Amyx v. Henry & Hall, ibid.
Applying these principles to the facts before us, it is readily apparent that Fowler is not an independent contractor. His freedom of action in performing the work required of him was limited in several respects. The time for the performance of the pickup and delivery chores was dictated and controlled by the depot agent, and, often, the order in which the deliveries and pickups were to be carried out was prescribed by him.
Fowler’s business was not independent. His sole source of employment, other than grave-digging after working hours, was with Southern Pacific Transport. Nor can it be said that Fowler was free to carry out this work by his own methods. It would be specious to believe that he could radically vary his methods or pattern of pickup and delivery without provoking a reprimand or disciplinary action by Southern Pacific Transport.
Another, and perhaps the most telling, fault in the contention that these facts present an independent contractor relationship is the stipulation that the contract between the parties could be terminated by either party upon written notice to the other, without incurring liability for breach; and the further stipulation that Southern Pacific Transport had the right to terminate the *119 relationship, .at any time when Fowler’s services “shall be unsatisfactory” to Southern Pacific Transport.
This right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship. See La.Civil Code. art. 2746; Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760 (1932); Bell v. Albert Hanson Lumber Co., Ltd., 151 La. 824, 92 So. 350 (1922).
We hold, therefore, that Fowler was an employee of Southern Pacific Transport. As Fowler’s employer, Southern Pacific Transport is responsible in solido with Fowler for damages caused by his negligent conduct in the course and scope of his employment. La.Civil Code arts. 176 and 2320.
In addition to some shock, pain and suffering, the evidence, particularly the deposition of Dr. J. W. Ambrister, shows that lies sustained a comminuted fracture of the proximal right femur together with some abrasions and bruises. The fracture was reduced by skeletal traction and the insertion- of a Steinman (metallic) pin through the region of the bone near the knee-' joint. Approximately six days later an intradullary Streete nail was inserted through the femur and the free, or separate, fragment was placed in position and attached to the bone by two screws. lies was discharged from the hospital on June 8, 1968.
Dr. Ambrister continued to see and treat the injured boy periodically. When he was. seen on October 4, 1968, the patient was-progressing to the doctor’s satisfaction, except that he was not cooperating by performing the prescribed exercises for-regaining muscle strength. Both the X-ray and clinical examination made by Dr. Ambrister at this time demonstrated the satisfactory progress in the patient’s recovery. Ordinarily this type injury healed completely in one year.
lies returned to the doctor’s office on October 30, 1969 with complaints of a recent injury to the already injured leg. He gave a history of having a nightmare two nights previously, in the course of which he walked in his sleep and fell from steps in the mobile house where he lived. The resulting injury to his leg caused a slight bowing. The doctor estimated this reinjury would retard the healing process about four months. The bowing of the leg will be permanent, but it was not felt desirable to subject the patient to the surgery required to correct it for, in the doctor’s opinion, the bowing will not result in appreciable impairment of normal function of the limb.
lies had numerous visitors during h.is period of convalescence, attended movies, and returned to school in September fol *121 lowing the injury, although he withdrew shortly thereafter for the fall term. At the time of trial, he testified that he was getting along fine and that he had resumed normal activities including swimming. He had a part-time job doing maintenance work at a local public building.
Considering the subsequent rein-jury and lies’ failure to adhere to the physician’s instructions to exercise and strengthen his muscles to hasten his recovery, these defendants should not respond in damages for the consequences attending the additional time required to bring about ultimate recovery. Nor should they be responsible for the partial disability, though slight, resulting from the bowing of lies’ leg. This latter injury was due to the fall in late October 1968 and was entirely unrelated to the May 1968 accident.
On these facts an award to Freda W. Hickman, for and on behalf of David Michael lies in the amount of $6,000 for personal injuries, pain and suffering is adequate. Medical expenses incurred, which have been supported by statements, amount to $1,100.72 and there should be judgment in favor of Freda W. Hickman in that amount. No showing of damage to the motorcycle having been made, that claim is rejected.
For the reasons assigned, there is judgment herein in favor of Freda W. Hickman, for and on behalf of David Michael lies and against Robert Allen Fowler and Southern Pacific Transport Company in solido in the amount of $6,000; and, further, against said defendants in solido in favor of Freda W. Hickman, individually, in the amount of $1,100.72, together with legal interest on said amounts from date of judicial demand until paid, and for all costs of these proceedings.
BARHAM, J., concurs.
TATE, J., concurs and assigns additional reasons.

. Stone, Tort Doctrine in Louisiana: Tire Concept of Fault, 27 Tul.L.Rev. 1, 2 (1952).