737 So.2d 102 (1999)
Taurus PRATER, Plaintiff-Appellant,
v.
Harold PORTER, et al., Defendant-Appellee.
No. 98-1481.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1999.
Ronald K. Seastrunk, Leesville, for Plaintiff/Appellant Taurus Prater.
W. Scott Judice, Lafayette, for Defendant/Appellee Dr. James Small, et al.
Rene' Joseph Pfefferle, Baton Rouge for Defendant/Appellee Beauregard Memorial Hospital.
Michael Keith Prudhomme, Lake Charles, for Defendant/Appellee Louisiana Patients' Fund, etc.
Before DECUIR, SULLIVAN, and GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, Taurus Prater, appeals the trial court's granting of summary judgment in favor of the defendant, Spectrum Emergency Care, Inc. (Spectrum), and dismissing *103 his claim with prejudice. For the following reasons, we affirm.

FACTS
Prater was injured on September 8, 1995, when the vehicle he was a passenger in left the road and crashed through two telephone poles and into a home located on 523 Carlise Street in DeRidder, Louisiana. The operator of the vehicle was intoxicated at the time of the accident. After being extricated from the vehicle, Prater was taken to the Beauregard Memorial Hospital, where he was treated by emergency room physicians, Drs. James Small and Darryl Driggs. In his petition, Prater alleges that these doctors failed to diagnose and treat fractures located in his cervical spine, which later rendered him paralyzed.
On February 14, 1996, Prater filed suit against the driver of the vehicle, its owner and insurer, Beauregard Memorial, and Drs. Small and Driggs. Beauregard Memorial was dismissed without prejudice from this suit by consent judgment on July 10, 1996. Prater subsequently added Spectrum as a defendant alleging that it contracted with Beauregard Memorial to provide emergency room physicians resulting in an employee/employer or principal/independent contractor relationship between it and the physicians. Thus, he argued that Spectrum was vicariously liable for their actions, or liable for its own acts of negligence in:
1. Failing to provide properly trained, qualified and competent emergency room physicians to work in Beauregard Memorial's emergency room.
2. Failing to provide proper procedures to investigate and determine skills, training and experiences of its physicians.
3. Such other acts as will be proven at trial.
The subject matter of this appeal concerns the trial court's granting of summary judgment in favor of Spectrum, based on a finding that no employee/employer relationship existed between it and the physicians, and that they were independent contractors. Accordingly, the trial court held that Spectrum was not vicariously liable for the actions of the physicians in failing to properly diagnose and treat Prater's cervical spine fractures.

ISSUE
On appeal, Prater raises only one assignment of error. He alleges that the trial court erred in granting Spectrum's motion for summary judgment when the motion basically asserted a failure to state a cause of action.

TYPE OF ACTION
Prater argues that Spectrum's motion alleges a failure to state a cause of action, which is properly raised in a peremptory exception of no cause of action. Since Spectrum employed the wrong procedural device, he claims the trial court erroneously granted summary judgment in the matter.
In its motion for summary judgment and supporting memorandum, Spectrum argues that it is entitled to summary judgment based on an absence of genuine issue of material fact with regard to the status of Drs. Small and Driggs as independent contractors. Although it does state that Prater's claim should be dismissed "as there is no theory under which the plaintiff can recover against Spectrum Emergency Care, Inc.," the basis for this argument is the lack of genuine issues of material fact concerning the independent contractor status of the two physicians. During the hearing on the motion, the trial court stated that Spectrum was arguing that if the facts concerning the physicians' independent contractor status was correct, then there remained no theory of recovery left to Prater. The trial court was correct in its conclusion. Accordingly, the motion for summary judgment was properly before the trial court. We will now address the trial court's judgment.

*104 SUMMARY JUDGMENT
Following the 1997 amendment of the summary judgment law, summary judgments are now favored, and shall be used to "secure the just, speedy, and inexpensive determination" of all actions, except those excluded by La.Code Civ.P. art. 969. La.Code Civ.P. art. 966(A)(2). The amendment is procedural and is to be applied retroactively. Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97), 701 So.2d 498, writ denied, 98-50 (La.3/13/98), 712 So.2d 882. The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). When faced with a motion for summary judgment supported by affidavits based on personal knowledge made by persons competent to testify on the matter, the opposing party cannot rest on his pleadings but must respond by affidavits, deposition testimony, or interrogatory answers that enumerate specific facts showing a genuine issue exists for trial. La.Code Civ.P. art. 967. However, if the adverse party will bear the burden of proof at trial, the mover's burden at the hearing on the motion for summary judgment does not require him to negate all essential elements of the adverse party's claim. Rather, the mover's burden is simply to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La.Code Civ.P. art. 966(C)(2). Finally, it is well settled that the appellate review of summary judgment is de novo, applying the same standard as the trial court. Accordingly, we undertake a de novo review of the matter at bar.
Pursuant to La.Civ.Code art. 2320, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Generally, a principal is not answerable for the offenses committed by an independent contractor, unless the independent contractor is performing ultra-hazardous work or if the principal reserves the right to supervise or control the work of the independent contractor. Alexander v. Lowes Cos., 96-2169 (La.App. 1 Cir. 9/19/97), 701 So.2d 239.
In Perkins v. Gregory Manufacturing Co., 95-1396, p. 4 (La.App. 3 Cir. 3/20/96), 671 So.2d 1036, 1038-39, writ denied, 96-971 (La.5/31/96), 673 So.2d 1039, we stated:
To attain the status of an independent contractor, it must be established that a valid contract exists between the parties and that the contract calls for specific piece of work as a unit which can be accomplished by non-exclusive means. [Hickman v. Southern Pacific Transp. Co., 262 La. 102, 262 So.2d 385 (1972)]. In carrying out the contractual obligation, the independent contractor must be able to employ its own methods free from the control and direction of the principal, except as to the desired results. Id. Furthermore, the contract must set a specific price for the overall undertaking, provide a specific time or duration in which the undertaking must be completed, and not be subject to termination at the will of either party without that party being subject to liability for breach. Id. Of primary concern, however, is whether the principal retained the right to control the work. In ascertaining the level of control retained by the principal, the actual control exercised is not as important as the right to control. Smith v. Crown Zellerbach, 486 So.2d 798 (La.App. 3 Cir.), writ denied, 489 So.2d 246 (La.1986).
Spectrum introduced five exhibits into the record in support of its motion for summary judgment: The affidavit of Adrienne *105 Sametz, a vice-president of Spectrum in September 1995, the Independent Contractor Physician Agreements entered into with Drs. Driggs and Small, and answers to interrogatories and requests for production propounded by Prater. Sametz stated that the Independent Contractor Physician Agreements between Spectrum and Drs. Driggs and Small were in effect in September 1995, and provided that the physicians were independent contractors and that Spectrum would not exercise any type of control relating to the manner or means in which they performed medical services or decisions in the emergency department.
The agreements, entitled "Independent Contractor Physician Agreements," provide the average number of hours per week and the number of weeks per year that the physicians are to provide emergency services for Beauregard Memorial; the hourly fee to be paid to the physician, a definite term that the agreement will last, and the manner in which it might be terminated. The agreement provides, in pertinent part,:
2. Physician agrees to abide by the working rules and to maintain the high professional, ethical, and moral standards of the Hospital Medical Staff. Physician's services and the manner of providing them are under the supervision of the Hospital Medical Staff.

. . . .
5. This Agreement shall in no way be construed to mean or suggest Corporation is engaged in the practice of medicine.
6. The relationship between Corporation and Physician pursuant to this Agreement shall be that of Independent Contractor. Corporation shall not exercise control of any nature, kind or description, relating to the manner or means in which Physician performs medical services or decisions in the emergency department. Physician shall be responsible for Physician's own actions and shall be subject to the application of the By-laws, Rules, and Regulations of the Medical Staff of Hospital.

. . . .
10. (c) The parties hereto recognize that providing services to emergency patients is a mixture of clinical skill and interpersonal relationships with patients, their families, hospital medical staff and administrator. Therefore, this Agreement is contingent upon Hospital's approval of Physician and its granting of medical staff privileges to Physician. If Hospital withdraws its approval of Physician and requests that Physician no longer be scheduled at Hospital or withdraws medical staff privileges, then Corporation may terminate this Agreement immediately by giving written notice to Physician by U.S. Certified Mail, Return Receipt Requested.
(Emphasis added).
In opposition to Spectrum's motion for summary judgment, Prater introduced into evidence the same Independent Contractor Physician Agreements as well as Spectrum's agreement with Beauregard Memorial. This agreement stated that Spectrum would provide licensed physicians to provide emergency care, while Beauregard Memorial would provide all else, including support staff, space, equipment, and supplies required to operate an emergency department. Beauregard Memorial agreed to bill all patients treated by the emergency room physicians, and to pay Spectrum a certain amount per hour for the service provided by the physicians. Spectrum agreed to provide malpractice insurance for the physicians. The term of the agreement was laid out, as well as the means of terminating it. The parties agreed that one of the physicians provided by Spectrum would be the medical director of the emergency department, whose duties would include:
[R]ecommending policies and procedures for the emergency department, handling patient complaints and physicians' staff conflicts, and initiating other activities to improve and increase emergency department services.
*106 The agreement further provided, in pertinent part:
11. For purposes of this Agreement, all physicians provided under this Agreement will be considered independent contractors and practitioners of medicine. In no way shall Corporation be considered or deemed to be engaged in the practice of medicine. Corporation shall not exercise control of any nature, kind or description, relating to the manner or means in which the physicians perform their duties and provide emergency department coverage nor shall Hospital exercise control or discretion over such practice of medicine. Physicians provided under this Agreement shall be responsible for their own actions and shall be subject to the application of the Bylaws, Rules and Regulations of the Medical Staff of Hospital.
After considering the evidence in the record, we conclude that the trial court correctly granted summary judgment in this matter. Prater conceded during argument that Spectrum had no control over how the physicians performed their professional medical services. It is obvious from the agreements that the physicians were under the control and supervision of Beauregard Memorial. The right of control is the single most important factor considered in determining employer/employee status. Suhor v. Medina, 421 So.2d 271 (La.App. 4 Cir.1982). In this instance, that right was exercised by Beauregard Memorial, not Spectrum. Accordingly, the judgment of the trial court is affirmed. This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this matter are assessed to the plaintiff-appellant, Taurus Prater.
AFFIRMED.