973 So.2d 947 (2008)
Patricia J. MIZE
v.
VAN METER, M.D. & ASSOCIATES and Eric R. Ehlenberger.
No. 2007-CA-0616.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2007.
Rehearing Denied January 16, 2008.
*948 Scott E. Silbert, Silbert & Garon, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Thomas E. Loehn, Charles K. Chauvin, Boggs, Loehn & Rodrigue, Metairie, LA, for Travelers Indemnity Company of Connecticut.
Jaime M. Cambre, Kelly Cambre Bogart, Duplass, Zwain, Bourgeois Morton Pfister & Weinstock, Metairie, LA, for Van Meter, M.D. & Associates.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MAX N. TOBIAS JR.).
MAX N. TOBIAS, JR., Judge.
From a judgment granting motions for summary judgment in favor of defendants, Van Meter, M.D. & Associates ("VMA") and their insurer, Travelers Indemnity Company of Connecticut ("Travelers"), the plaintiff, Patricia J. Mize ("Mize"), appeals. For the reasons that follow, we affirm.
This case involves a personal injury suit brought by Mize against VMA, Travelers, and Eric Ehlenberger, M.D.("Dr. Ehlenberger"), arising out of an alleged intentional tort committed by Dr. Ehlenberger. This appeal only involves the granting of summary judgment in favor of VMA and Travelers.
On 23 March 2004, Mize was working as a nurse in the emergency room at Tulane University Medical Center in New Orleans ("Tulane"). Mize alleged that Dr. Ehlenberger approached her and, in a joking manner, placed his hands loosely around her neck, shook her and pretended to choke her. As a result, Mize claims to have suffered permanent and disabling injuries.
At the time of the incident, VMA, a medical staffing agency, was under contract with Tulane to recruit and furnish emergency room physicians to Tulane. Dr. Ehlenberger was under contract with VMA to provide services to Tulane as an emergency room physician. Mize alleged in her petition that VMA is vicariously liable for Dr. Ehlenberger's action pursuant to the doctrine of respondeat superior, and that Travelers is liable as VMA's insurer.
Both VMA and Travelers filed motions for summary judgment seeking dismissal on the grounds that Dr. Ehlenberger is an independent contractor for whose acts VMA is not responsible. Travelers further contends that because Dr. Ehlenberger is not an employee of VMA, he is not covered under the policy issued to VMA. On March 14, 2007, after hearing oral argument on the matter, the trial court granted summary judgment in favor of VMA and Travelers. In written reasons for judgment, the trial judge found that VMA was not vicariously liable for Dr. Ehlenberger because Dr. Ehlenberger was an independent contractor. The trial court further reasoned that because of his independent contractor status, Dr. Ehlenberger was not an "employee" as defined under Travelers' policy with VMA. From this judgment, Mize devolutively appealed.
We review the granting of the motions for summary judgment utilizing a de novo standard. Reynolds v. Select Properties, Ltd., 93-1480, p. 4 (La.4/11/94), 634. So.2d 1180, 1182.
The issue presented in this appeal is whether a master-servant relationship existed between Dr. Ehlenberger and VMA, thus rendering VMA vicariously liable for Dr. Ehlenberger's actions.
Under the provisions of La. C.C. art. 2320, "[m]asters and employers are answerable for the damage occasioned by servants and overseers, in the exercise of *949 the functions in which they are employed." The concept established by this article is called "vicarious liability." However, vicarious liability does not apply when an independent contractor relationship exists. Marchetta v. CPC of Louisiana, Inc., 99-0485, p. 6 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 155. Nevertheless, the aexistence of an independent contractor agreement is not necessarily dispositive of the issue of whether a physician is an independent contractor, as opposed to an employee of a hospital, and courts will inquire as to the real nature of the relationship and the degree of control exercised or ability to control by the hospital over the physician's activities. Coleman v. Acromed Corp., 34,354, pp. 3-4 (La.App. 2 Cir. 2/7/01), 779 So.2d 1060, 1063.
The distinction between employment and independent contractor relationships was examined in Hickman v. Southern Pacific Transport Company, 262 La. 102, 117, 262 So.2d 385, 390-391 (1972), as follows:
It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. (Citations omitted.)
The Louisiana Supreme Court has recognized that vicarious liability, by its nature, mandates strict construction. Roberts v. State, Through Louisiana Health and Human Resources Administration, 404 So.2d 1221, 1225 (La.1981). In Roberts, the Court stated that the single most important factor to consider in deciding whether the employer-employee relationship exists for the purpose of La. C.C. art. 2320 is the right of the employer to control the work of the employee, citing Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), which explained: "[i]t is the Right [sic] of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant." Blanchard, 253 La. at 44, 215 So.2d at 905.
VMA cites two cases in support of the position that VMA was not vicariously liable for Dr. Ehlenberger: Prater v. Porter, 98-1481. (La.App. 3 Cir. 3/3/99), 737 So.2d 102, and Jones v. Angelette, 05-0597 (La. App. 4 Cir. 12/21/05), 921 So.2d 1017.
*950 In Prater, the Third Circuit upheld the summary judgment granted in favor of the staffing agency that provided emergency room physicians to Beauregard Memorial Hospital. Relying on the contract between the staffing agency and the physician and the contract between the staffing agency and the hospital, the court concluded that it was obvious that the emergency room physician was under the control and supervision of the hospital, not the staffing agency. Prater, 98-1481, p. 8, 737 So.2d at 106.
In Jones, a patient's widow brought a medical malpractice action against the emergency room physician and VMA, as the agency that provided physicians to staff the emergency room. This court affirmed the trial court's granting of summary judgment in favor of VMA. We rejected the plaintiff's argument that VMA controlled the emergency room physician's work schedule, physical activities, and compensation. Relying on the holding in Prater, we determined in Jones that VMA was not vicariously liable for the actions of the defendant doctor.
In support of the motion for summary judgment in the case at bar, VMA introduced the VMA/Physician Agreement and the VMA/Tulane Agreement, which provide at pertinent points:
The physician is an independent contractor of VMA who is "responsible for his own actions".
* * *
The physician "is solely responsible for the consequences of his professional judgment in the treatment of his patients. Subject to the provision of this contract, physician shall be free to devote his time and attention to such activities as he deems appropriate".
* * *
"Physician shall abide by the terms of the contract(s) between Van Meter and hospital(s) where the physician provides professional services".
* * *
The physician shall abide by "all applicable standards set forth by law or an ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing or advisory body having authority to set standards for health care facilities". And the physician "shall perform all emergency medical services in accordance with all hospital rules, regulations, procedures, policies and by-laws and all medical staff rules, regulations, procedures, policies and by-laws".
The hospital shall provide all necessary supplies, services, and non-physician staff.
* * *
All physicians shall "meet the qualifications set forth for medical staff membership as defined in the medical staff bylaws and will be classified as independent contract physicians and will be afforded those clinical privileges as approved" and shall "act at all times in accordance with the American Medical Association's Ethical and Professional Standards".
* * *
The hospital will bill for the physician's services and will pay the staffing entity an hourly fee for the physician's services provided.

*951 * * *
The staffing entity will provide medical malpractice insurance on behalf of the physicians.
VMA correctly points out that the VMA/Physician Agreement and the VMA/Tulane Agreement in the case at bar are similar to the agreements relied on by the courts in Prater and Jones.
In further support of its motion for summary judgment, VMA introduced the deposition testimony of Sylvia Cusimano, VMA's corporate representative. Ms. Cusimano testified that: (1) Dr. Ehlenberger is an independent contractor for VMA; (2) Tulane has the right to fire Dr. Ehlenberger; (3) the physician's work attire is determined by hospital policy; (4) VMA's function is to give hospitals or clinics assistance with credentialing of physicians and to recruit physicians to work at the different facilities; and (5) VMA does not provide any bonuses, incentives, or fringe benefits to any of its contracted physicians.
Finally, Dr. Ehlenberger testified to the following in his deposition: (1) He is an independent contractor with VMA; 2) he, not VMA, directs the number of shifts per month; (3) when he goes to work at Tulane, he reports directly to Tulane and does not go to the VMA office; (4) VMA does not assert any control at all in his functions at Tulane; (5) Tulane provides him with privileges to work in the emergency department; (6) Tulane's Credentialing Committee can suspend or revoke his, privileges without going through VMA; and (7) he can work anywhere else he chooses other than Tulane.
Mize asserts that the facts presented in this case do not show that Dr. Ehlenberger was an independent contractor. Moreover, she submits that a determination of the applicability of the doctrine of respondeat superior is largely a question of fact; and, therefore, summary judgment is not appropriate.
In opposition to the summary judgment, Mize introduced the deposition of Tulane's corporate representative, Kimberly Ryan, Ms. Ryan testified that Tulane considered the physicians supplied by VMA to be employees of VMA. She stated that VMA, through its medical director, Mike Kolinsky, scheduled all of the shifts for the emergency room physicians. Ms. Ryan further testified that if there was a problem with one of the physicians supplied by. VMA, Tulane would go first to Mike Kolinsky. Moreover, she stated that Tulane did not have the authority to fire one of the VMA doctors without first going to VMA.
Mize argues that the cases cited by VMA, i.e., Prater and Jones, are neither relevant nor persuasive because they involve allegations of medical malpractice on the, part of the emergency room physician while the allegations in this case stem solely from Dr. Ehlenberger's social behavior toward a non-patient.
We find no merit in the argument that VMA would not be vicariously liable for an emergency room physician who commits medical malpractice (as determined in Jones and Prater) but would somehow be vicariously liable if that same physician committed a tort against a non-patient while working in the emergency room. The issue of VMA's right to control Dr. Ehlenberger while working in the Tulane emergency room would be the same in either case. We also note that Mize has presented no legal authority in support of this position.
Mize also contends that. Dr. Ehlenberger is not an independent contractor of VMA pursuant to the guidelines set forth in Hickman, supra, because the contract between VMA and Dr. Ehlenberger allows for his termination without cause. The Hickman court stated that: "[t]his right to *952 terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship. The right is at the same time antagonistic to the independent contractor relationship." Hickman, 262 La. at 119, 262 So.2d at 391.
The contract between Dr. Ehlenberger and VMA does not allow for termination without cause. To the contrary, the contract provides for termination if the physician engages in certain unprofessional conduct.
Finally, Mize argues that Dr. Ehlenberger is not an independent contractor using the Hickman, analysis because the duration of the contract with VMA is open ended. We disagree. It is evident that the contract provided for a specific term, which would be automatically renewed unless the physician was terminated by written notice 90 days prior to the term date. Again, the contract does not provide for termination without cause.
The jurisprudence dictates that independent contractor status must be determined from a totality of the circumstances. In the present case, we find that the evidence presented demonstrates, without question, that VMA did not have the right to control Dr. Ehlenberger while working as an emergency room physician at Tulane.
After our de novo review of the record, and considering this court's decision in Jones and the Third Circuit's decision in Prater, we find no error on the part of the trial court in granting summary judgment in favor of VMA and Travelers based upon a finding that VMA was not vicariously liable for Dr. Ehlenberger. Accordingly, we affirm.
AFFIRMED.