# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0515

## DESHUN K. CARTER

### VERSUS

## BLUE HILL SPECIALTY INSURANCE COMPANY, FORWARD LOADS, LLC, JAMAR HOOKER, USAA CASUALTY INSURANCE COMPANY, AND TALISH JOSIE WATTS

Judgment Rendered: DEC 17 2025

* * * * *

On Appeal from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Trial Court No. 2023-0004631

The Honorable Brenda Bedsole Ricks, Judge Presiding

* * * * *

| | |
|---|---|
| Jeffrey P. Green<br>Jeffrey S. Gennusa<br>Ana M. Rodrigues<br>Metairie, Louisiana | Attorneys for Plaintiff/Appellant,<br>Deshun K. Carter |
| Charles V. Giordano<br>Travis J. Beslin<br>Sarah E. Skidmore<br>Metairie, Louisiana | Attorneys for Defendant/Appellee,<br>Blue Hill Specialty Insurance<br>Company |

* * * * *

BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.

**MILLER, J.**

Plaintiff/Appellant, Deshun K. Carter ("Carter"), appeals a summary judgment dismissing his claims against Defendant/Appellee, Blue Hill Specialty Insurance Company ("Blue Hill"), with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Carter filed a "Petition for Damages" on December 13, 2023, against Forward Loads, LLC ("Forward Loads"); Blue Hill, in its capacity as the automobile liability insurer for Forward Loads; Jamar Hooker ("Hooker"); Talish Josie Watts ("Watts"); and USAA General Indemnity Company ("USAA"), in its capacity as the automobile liability insurer for Watts.[1] In his petition, Carter alleged that on January 11, 2023, he was a passenger in a Freightliner that was being operated by Hooker, the owner of Forward Loads. He alleged that Hooker was driving the Freightliner westbound on Bel Air Boulevard in St. Tammany Parish, and at the same time, Watts was driving a Honda Civic westbound on Bel Air Boulevard, several vehicles behind the Freightliner. Carter contended Hooker stopped the Freightliner to let following motorists pass, and Watts drove to the left side of the Freightliner, into the opposing lane of traffic, in an effort to get around the Freightliner. Carter further alleged that while Watts was attempting to pass the Freightliner, Hooker turned the Freightliner left, and the Freightliner collided with Watts's vehicle.

Carter alleged that he suffered damages[2] caused by the carelessness, recklessness, and/or negligence of Hooker and Watts. Carter contended that Forward Loads was vicariously liable for the acts of Hooker because Hooker was in the course

---

[1] We note that USAA General Indemnity Company was improperly named as USAA Casualty Insurance Company in the petition.

[2] Carter contended that his damages included but were not limited to: past and future medical and related expenses; past and future mental and physical pain and suffering; past and future loss of enjoyment of life; and past and future out of pocket expenses.

and scope of his employment with Forward Loads at the time of the accident. In response to Carter's petition, Blue Hill, Forward Loads and Hooker, and Watts and USAA each filed answers, which included affirmative defenses and requests for a jury trial.

On October 10, 2024, Blue Hill filed a motion for summary judgment, contending that the commercial automobile liability insurance policy issued by Blue Hill to Forward Loads did not afford coverage because Carter was an "employee" of Forward Loads, as defined in its policy, at the time of the accident. Blue Hill filed a memorandum in support of its motion with three exhibits attached, including (1) Carter's petition; (2) the affidavit of David J. Hale, Business Systems Consultant for the Progressive Group of Insurance Companies, with a certified copy of Blue Hill's Louisiana Commercial Auto Policy issued to Forward Loads attached; and (3) the transcript of Hooker's deposition testimony. Thereafter, on November 12, 2024, Carter filed a memorandum in opposition to Blue Hill's motion for summary judgment with exhibits, including (1) Carter's affidavit with a text message he received from Hooker attached; (2) excerpts of Hooker's deposition testimony; and (3) Carter's second set of interrogatories and request for production of documents issued to Forward Loads. Blue Hill filed its reply to Carter's memorandum in opposition on November 19, 2024.

Following a hearing on the motion for summary judgment, the trial court signed a judgment on December 4, 2024, granting summary judgment in favor of Blue Hill and dismissing all of Carter's claims against Blue Hill with prejudice. Carter appealed, contending that the trial court erred in granting summary judgment because discovery was outstanding and because the trial court made an improper credibility determination, misapplied the multi-factor test for employment status, and failed to find genuine issues of material fact existed.

3

## DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Grady v. Ahles, 2024-0244 (La. App. 1st Cir. 12/20/24), 404 So. 3d 886, 890. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Leet v. Hospital Service District No. 1 of East Baton Rouge Parish, 2018-1148 (La. App. 1st Cir. 2/28/19), 274 So. 3d 583, 587.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover makes a *prima facie* showing that its motion should be granted, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. If the adverse party fails to meet this burden, the mover is entitled to judgment as a matter of law. See id.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. Harris v. Tractor Supply Company, 2023-0337 (La. App. 1st Cir. 10/30/23), 377 So. 3d 726, 732, writ denied, 2023-01489 (La. 1/17/24), 377 So. 3d 245. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. Id. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Harris, 377 So. 3d at 733.

In Carter's third assignment of error, he contends that the trial court erred in granting summary judgment because discovery was outstanding. Specifically, Carter argues that he propounded a second set of interrogatories and requests for production to Forward Loads and Hooker, seeking documents such as tax returns, payroll records, canceled checks, employment applications, tax documents, workers' compensation policies, and bank statements. He asserts that those documents "directly pertain to the factual determination of employment status."

Louisiana Code of Civil Procedure article 966(A)(3) requires that parties have "an opportunity for adequate discovery" before summary judgment is granted. The requirement is that adequate discovery be conducted, not that discovery be completed. Trichell v. McClure, 2021-1240 (La. App. 1st Cir. 4/8/22), 341 So. 3d 856, 862. There is no absolute right to delay a motion for summary judgment until discovery is complete. Preston v. Southern University Through Board of Supervisors of Southern University Agricultural and Mechanical College, 2020-0035 (La. App. 1st Cir. 7/13/21), 328 So. 3d 1194, 1203. The trial court has broad discretion when regulating pre-trial discovery, which will not be disturbed on appeal absent a clear showing of abuse. It is within the trial court's discretion to render a summary judgment or require further discovery. Campbell v. Dolgencorp, LLC, 2019-0036 (La. App. 1st Cir. 1/9/20), 294 So. 3d 522, 527.

Carter attached his second set of interrogatories and request for production of documents to Forward Loads to his opposition memorandum. His second set of interrogatories and request for production of documents to Forward Loads was issued on or about October 8, 2024, which was immediately prior to Blue Hill's motion for summary judgment was filed. Carter's affidavit was also attached to his opposition memorandum. It appears that Carter directly testified, through his affidavit, regarding the items of information that he complains about not receiving in discovery. Specifically, Carter stated that he was paid at a rate of $110.00 per day

5

by cash or Cash App when he worked a delivery; he was not on the payroll of Forward Loads; he was never paid via check; he did not fill out an employment agreement or any tax documents; and he was not offered any employment benefits through Forward Loads. Further, we note that despite his assertion that discovery was outstanding, Carter did not request a continuance of the summary judgment hearing. See Campbell, 294 So. 3d at 528. After thorough review, we find that the trial court did not abuse its discretion in proceeding with the summary judgment hearing. This assignment of error is without merit.

In his first and second assignments of error, Carter contends that the trial court erred in its determination that he was an employee of Forward Loads and that he was therefore excluded from recovery under the Blue Hill policy. He specifically argues that in finding he was an employee of Forward Loads, the trial court made credibility determinations, misapplied the test for determining employment status, and failed to find genuine issues of material fact exist. Whether or not Carter was an employee drives the determination of coverage under the Blue Hill policy.

The interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment. Ellis v. Circle L Trucking, L.L.C., 2021-0457 (La. App. 1st Cir. 12/30/21), 340 So. 3d 985, 989. An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. Boudreaux v. Coco, 2021-1009 (La. App. 1st Cir. 4/28/22), 342 So. 3d 354, 359. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms.

6

Miller v. Superior Shipyard and Fabrication, Inc., 2001-2683 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 203. However, an insurer has the burden of proving that a loss falls within a policy exclusion. Savoie v. Anco Insulations, Inc., 2020-0584 (La. App. 1st Cir. 4/9/21), 322 So. 3d 1264, 1266. Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. See id. at 1266-1267. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Id. at 1267.

Subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Myers v. Welch, 2017-0063 (La. App. 1st Cir. 10/25/17), 233 So. 3d 49, 55, writ denied, 2017-2165 (La. 3/9/18), 238 So. 3d 454. A summary judgment declaring a lack of coverage under an insurance policy may be rendered when there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. Boudreaux, 342 So. 3d at 360.

Blue Hill sought summary judgment on the basis that an exclusion applies to preclude coverage for Carter's claims. Accordingly, Blue Hill bore the burden of proof both as the moving party seeking summary judgment and as the insurer seeking to avoid coverage through summary judgment. See Boudreaux, 342 So. 3d at 362. Thus, the initial question before this court is whether Blue Hill established that the exclusion contained in the policy applies based upon a set of facts which are not genuinely in dispute to exclude coverage for Carter's claims.

7

In its motion for summary judgment, Blue Hill referred to and attached the following policy exclusions:

## GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

\*\*\*

5. **"Employee"** includes a **leased worker** and a statutory employee. **Employee** does not include a **temporary worker**.

\*\*\*

## PART I—LIABILITY TO OTHERS

**INSURING AGREEMENT—LIABIILTY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured** auto. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

\*\*\*

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

\*\*\*

3. **Worker's Compensation**
Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

\*\*\*

5. **Employee Indemnification and Employer's Liability**

8

**Bodily injury** to:
  a. An **employee** of any **insured** arising out of or within the course of:
     (i)   That **employee's** employment by any **insured**; or
     (ii)  Performing duties related to the conduct of any **insured's** business; or
  b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

This exclusion apples:
  a. Whether the **insured** may be liable as an employer or in any other capacity; and
  b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*\*\*

**6. Fellow Employee**
**Bodily injury** to:
  a. a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of your business.
  b. the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

\*\*\*

It is undisputed that Forward Loads was an insured under the Blue Hill policy. Additionally, a reading of the exclusion leaves no doubt as to its meaning: the policy does not afford coverage for any obligation for which Forward Loads or its insurer may be held liable under workers' compensation nor for any bodily injury sustained by a Forward Loads employee or fellow employee that arose within the course of the employee's employment with Forward Loads. While Carter alleges that he sustained a bodily injury while working for Forward Loads, Carter maintains that he is not excluded under the policy because he was not an employee of Forward Loads. Therefore, the issue in this appeal is the nature of the relationship between Carter and Forward Loads and how that relationship determines coverage under the policy.

In support of its motion, Blue Hill first attached Carter's petition. Carter alleged that the accident occurred due to the careless, reckless, and/or negligent acts of Hooker and Watts and that he sustained injuries due to the accident. He further alleged that Hooker was in the course and scope of his employment with Forward

9

Loads at the time of the accident. Blue Hill also attached the transcript of Hooker's deposition testimony in support of its motion. In his deposition, Hooker testified that he is the owner of Forward Loads and his wife is the manager of the company. He stated that Forward Loads makes deliveries for Wayfair through a broker company called Supreme. He further testified that Supreme performs background checks on the driver and the helper, so when Carter started working for Forward Loads, he had to fill out a background check for Supreme. Hooker stated that Forward Loads gets the information about each job through a tablet supplied by Supreme or Wayfair. He also testified that Supreme requires that persons doing deliveries wear all black attire, which Forward Loads employees provide themselves, and a reflective vest, which Forward Loads provides.

Hooker testified that, at the time of the accident, Forward Loads had three employees, himself, his wife, and Carter, but he later stated that his wife does not get paid for working at Forward Loads. Further, Hooker indicated Carter did not have a contract with Forward Loads, and as a helper, Carter would help load and unload the truck, help make deliveries, help assemble furniture, watch out for the driver, and make phone calls to some of the customers. He testified that Carter typically worked at Forward Loads on weekdays, Forward Loads paid Carter a flat rate through cash or Cash App at the end of each week, and Forward Loads paid Carter in cash "because of his child support situation."[3] Hooker stated that Carter would work with Forward Loads on other jobs that were not procured through Supreme and Carter was on Forward Loads' payroll, but there were no taxes taken out and there was no health insurance.

---

[3] We note that, during Hooker's deposition, he testified that, at the time of the accident, his sister was in a relationship with Carter. However, the child support to which Hooker referred was to be paid to a different woman.

Hooker testified that when the accident occurred, he and Carter were delivering furniture for Wayfair and that Hooker was driving a box truck and Carter was a passenger in the vehicle. Further, he testified that they arrived near the delivery location, they came to a complete stop to let some of the vehicles behind them pass before backing into the driveway where the delivery was to take place. Hooker testified that he thought Watts was "letting [him] go," so he proceeded to make a left turn before reversing. As he did so, the front driver's side of Hooker's vehicle struck the right rear of Watts' vehicle. Hooker stated that after the accident, Carter made the delivery while Hooker spoke to the police about the accident. He further stated that about a month or two after the accident, Hooker fired Carter from Forward Loads because Supreme did not want Carter on the job anymore.

In opposition to Blue Hill's motion, Carter submitted his affidavit with a text message attached,[4] excerpts of Hooker's deposition, and his second set of interrogatories and request for production of documents sent to Forward Loads. In his affidavit, Carter stated that he works various jobs, including grass cutting, pressure washing, and moving services. Carter further stated that, when he worked for Forward Loads, Hooker would call him the night before to offer him a job delivering furniture, and Carter would either accept or reject the job. Carter claimed that he did not have a set work schedule with Forward Loads and that he worked for

_____

[4] When Hooker was questioned about a text message he sent to his sister, he testified that after Watts filed her lawsuit, he and Carter filed lawsuits. Hooker further testified that he was found to be at fault, so Watts received a payment. Hooker then stated,

> Since I'm at fault anyway, right, I might as well let my family get something, right? I told him what to tell you so he can get some money. Since I'm losing out, someone on my side might as well win. You get what I'm saying? . . . The way it is, just like I was helping him out with paying him cash for he want to get the child support taken out, not by my sister, by his other baby momma, I did that just to look out for my family. It was my family members. . . . Watts got $300,000 for a bump that they could have beat, but they didn't try to beat because they so quick on the payout. Progressive let me down, so I was going to let them down. . . . As far as all goes down, yeah, he worked for me. The way he get paid is by saying he don't, right?

Later, when Hooker was questioned about the discrepancies between his testimony and what he sent in the text message, he stated, "My testimony today is true. What this text message is -- That's why this text message is for [Carter]. . . . It's not accurate."

11

Forward Loads on an as-needed basis. Carter further claimed that Forward Loads did not pay him at regular intervals, he was not on Forward Loads' payroll, he did not have an employment agreement with Forward Loads, he did not get any tax documents from Forward Loads, he was never issued a uniform by Forward Loads, he did not receive instructions on how to perform the job from Forward Loads, and he was not trained by Forward Loads.

Additionally, the text message attached to Carter's affidavit was a message sent from Hooker to Hooker's sister on November 29, 2023, and it states,

> Tell him to tell his lawyer he is a [subcontractor] he do 1099 not [W-2] he never filled out an application for my company and worked with me not for me he already had the skills to perform the job he is my [brother-in-law] and we met on a moving job that we both were [subcontractors] for.
>
> He has no set schedule he accepts his own jobs day by day.

Next, in the excerpts of Hooker's deposition testimony, Hooker stated that Carter worked for Forward Loads as a helper and that Carter did not fill out an employment application. Hooker testified that he informed Supreme that Carter would be working for Forward Loads, so Supreme required Carter to fill out a background check. Hooker further stated that Carter worked for Forward Loads Monday through Friday, Carter was on Forward Loads' payroll, Forward Loads did not issue a 1099 or W-2 to Carter, Carter was not trained by Forward Loads, and Carter was not offered insurance through Forward Loads. Hooker stated that Carter could choose when he wanted to work, but like any other job, he had to let Hooker know in advance when he needed to take off of work. Further, Hooker testified that when Carter took off of work, Hooker had to find someone to replace him.

The policy provides that Blue Hill will generally pay damages for bodily injury for which Forward Loads becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of Forward Loads' Freightliner. However, the policy further provides that Blue Hill will not cover any obligation for

12

which Forward Loads or its insurer may be held liable under workers' compensation nor any bodily injury sustained by a Forward Loads employee or fellow employee that arose within the course of the employee's employment with Forward Loads.[5]

Initially, we find that Blue Hill made a *prima facie* showing that its motion should be granted by establishing that Forward Loads was an insured under the Blue Hill policy and that Carter was an employee of Forward Loads at the time of the accident. The evidence presented by Blue Hill establishes that Carter's work was not of an independent nature. Carter did not control how the work assigned to him was to be done, and Carter was Hooker's helper with no independent responsibility. Further, Carter had to follow Hooker's direction in accomplishing the work, which consisted of loading and unloading the truck, delivering furniture, assembling furniture, watching out for the driver, and making phone calls to customers. Accordingly, the burden shifted to Carter to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Blue Hill was not entitled to judgment as a matter of law.

After review of Carter's memorandum in opposition and supporting documents, we find that Carter's affidavit does not create a genuine issue of material fact as to Carter's status as an employee. Even if we accept Carter's version of the

---

[5] The distinction between an employee and an independent contractor status is a factual determination to be decided on a case-by-case basis. Tower Credit, Inc. v. Carpenter, 2001-2875, (La. 9/4/02), 825 So. 2d 1125, 1129. The single most important factor to consider in deciding whether the employer-employee relationship exists, for purposes of La. C.C. art. 2320, is the right of the employer to control the work of the employee. Bolden v. Tisdale, 2021-00224 (La. 1/28/22), 347 So. 3d 697, 708. It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant. Blanchard v. Ogima, 215 So. 2d 902, 905 (La. 1968). The four primary evidentiary factors considered in deciding whether such an employer-employee relationship exists relate to whether the alleged employer has the right or duty, relative to the employee, of: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. Hillman v. Comm-Care, Inc., 2001-1140 (La. 1/15/02), 805 So. 2d 1157, 1162. However, no one factor is controlling; rather, the totality of the circumstances must be considered, and the burden of proof is on the party seeking to establish an employer-employee relationship. Hillman, 805 So. 2d at 1163. In contrast to the employer-employee relationship, the status of an independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. Hickman v. Southern Pac. Transport Co., 262 So. 2d 385, 390 (La. 1972).

facts, we conclude those facts establish that Carter was an employee of Forward Loads and that he is therefore excluded from recovery under the Blue Hill policy. Carter's affidavit establishes that he worked for Forward Loads as Hooker's helper. Specifically, he rode to work with Hooker, delivered and assembled the furniture as scheduled for the day, and was paid for his work after the deliveries were completed. While Carter states that he was an independent contractor, statements of legal conclusions are not competent as summary judgment evidence. See Roach v. Moffatt, 55,415 (La. App. 2nd Cir. 1/10/24), 379 So. 3d 268, 275. Additionally, Carter argues that there is no evidence the he was covered under the workers' compensation policy issued to Forward Loads and Hooker. However, the Blue Hill policy clearly states that it does not cover any obligation for which Forward Loads or an insurer of Forward Loads, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law. Therefore, we find that Carter did not produce factual support sufficient to establish the existence of a genuine issue of material fact and or that Blue Hill was not entitled to judgment as a matter of law. These assignments of error are without merit.

## CONCLUSION

For the above and foregoing reasons, the December 4, 2024 judgment of the trial court granting Blue Hill Specialty Insurance Company's motion for summary judgment and dismissing Deshun K. Carter's claims against Blue Hill Specialty Insurance Company is affirmed. All costs of this appeal are assessed against Deshun K. Carter.

**AFFIRMED.**