STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-0112


STANLEY RICHARD GORDON

VERSUS

GLEN HURLSTON, M.D.


********** 

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 67,804
HONORABLE VERNON BRUCE CLARK, DISTRICT COURT JUDGE

**********
JOHN D. SAUNDERS
JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, John D. Saunders, and Billy Howard Ezell, Judges.

**Thibodeaux, J., dissents in part and assigns written reasons.**


AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.


**John E. Bergstedt**
**The Bergstedt Law Firm**
**P. O. Box 1884**
**Lake Charles, LA 70602**
**Telephone: (337) 436-4600**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Glen Hurlston, M.D.**

**Scott Westerchil**
**101 South First Street**
**Leesville, LA 71446**
**Telephone: (337) 239-9076**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Stanley Richard Gordon**

**SAUNDERS, Judge.**

In this employment status case, Plaintiff, Stanley Richard Gordon, a certified registered nurse anesthetist (CRNA), appeals the trial court's judgment in favor of defendant and plaintiff-in-reconvention/appellee, Glen Hurlston, M.D., A Professional Medical Corporation. The trial court held that Mr. Gordon was an independent contractor rather than an employee of Dr. Hurlston. Mr. Gordon further appeals the trial court's judgment in favor of Dr. Hurlston on his reconventional demand for reimbursement of amounts billed for services provided, which are now uncollectible or not reimbursable due to Mr. Gordon's failure to maintain his CRNA license. For the following reasons, we affirm the judgment of the trial court with respect to its determination that Mr. Gordon was an independent contractor. We affirm the trial court's judgment on Hurlston's reconventional demand and its award of $53,354.55. We also affirm the trial court's denial of Mr. Gordon's request for past due wages. Finally, we reverse the trial court's award of $2,500.00 in attorney's fees to Dr. Hurlston.

## FACTS

Mr. Gordon and Dr. Hurlston entered into a contract on June 30, 1999. Although the agreement states that Mr. Gordon is to be an independent contractor, the parties' dispute centers around whether Mr. Gordon was an independent contractor or an employee of Dr. Hurlston. The agreement provided that Mr. Gordon would work five days per week at a salary of $10,000.00 per month. Dr. Hurlston also agreed to provide Mr. Gordon with vacation coverage to accrue at "the rate of three (03) weeks per year, Saturdays and Sundays included." Provisions for reviewing the terms and conditions of the contract, six months from the beginning date of the contract and annually thereafter, were included in the agreement.

By February 2001, Mr. Gordon's salary was increased to $12,500.00 per month. The parties dispute whether the contract was ever reviewed and modified during Mr. Gordon's term with Dr. Hurlston. Dr. Hurlston contends that there was a salary modification and negotiations involving the payment of overtime. Dr. Hurlston claims that he presented a new contract to Mr. Gordon at the time Mr. Gordon announced his resignation. On February 9, 2001, Mr. Gordon submitted his resignation and gave a thirty-day notice of his intent to leave his employment. Mr. Gordon stopped working for Dr. Hurlston on March 20, 2001, and claims that Dr. Hurlston did not pay him for three weeks he worked during the month of March 2001. Meanwhile, Dr. Hurlston received notification two days prior to Mr. Gordon's last day of work that Mr. Gordon was not licensed to provide CRNA services in the state of Louisiana. When the parties entered into the employment contract Mr. Gordon had received a temporary permit from the Louisiana Board of Nursing, effective September 15, 1999, with an expiration date of February 15, 2000. However, Mr. Gordon continued to provide CRNA services pursuant to the contract until March 20, 2001. Dr. Hurlston was further notified that he could be called upon to reimburse third parties for the amounts billed for CRNA services provided by Mr. Gordon during the time he was not licensed, and that he could not bill for services performed by Mr. Gordon that had not yet been billed.

On September 19, 2001, Mr. Gordon filed a petition for "Past Due Wages Attorney's Fees and Court Costs." In response, Dr. Hurlston filed an "Answer and Reconventional Demand" seeking reimbursement for CRNA services performed by Mr. Gordon during the period he was not licensed. The trial court rejected Mr. Gordon's claim that he was an employee of Dr. Hurlston and, therefore, entitled to the remedies prescribed by La.R.S. 23:631. With respect to Dr. Hurlston's reconventional

2

demand, the trial court found in favor of Dr. Hurlston, and against Mr. Gordon, granting Dr. Hurlston's request for reimbursement of amounts billed and paid for services provided by Mr. Gordon as a CRNA when he was not licensed to provide such services. It is from this judgment that Mr. Gordon appeals.

The following issues are presented for our review:

    (1)    whether Mr. Gordon was an employee or independent contractor;

    (2)    whether Mr. Gordon is entitled to past due wages, vacation pay, penalties, and attorney fees;

    (3)    whether the trial court erred in concluding that Dr. Hurlston suffered financial losses as a result of Mr. Gordon's unlicensed status; and,

    (4)    whether Dr. Hurlston was entitled to attorney fees.

## LAW AND DISCUSSION

Mr. Gordon asserts that although his agreement with Dr. Hurlston states that he is to supply CRNA services as an independent contractor, he is actually an employee of Dr. Hurlston. Therefore, he argues he is entitled to be paid "on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first." La.R.S. 23:631(A)(1)(b). He further notes that failure to pay subjects the employer to penalties and attorney fees. La.R.S. 23:632.

**Independent Contractor/Employee**

The distinction between independent contractor and employee status is a factual determination decided on a case-by-case basis. *Tower Credit, Inc. v. Carpenter,* 01-2875 (La. 9/4/02); 825 So.2d 1125. Mr. Gordon raised the issue of whether he was an employee of Dr. Hurlston or an independent contractor. The application of La.R.S. 23:631-632 to the present case is contingent upon a finding that Mr. Gordon

3

was, in fact, an employee of Dr. Hurlston. *See Knapp v. The Management Co.*, 476 So.2d 567 (La.App. 3 Cir. 1985).

In *Hickman v. Southern Pacific Transport Company*, 262 So.2d 385 (La.1972), the supreme court found the following factors relevant in determining whether the principal-independent contractor relationship exists, so as to relieve the employer from liability for the tortious acts of its employee: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. The supreme court's analysis with respect to determining whether one is an independent contractor or an employee for purposes of liability under La.C.C. art. 2320 is helpful in determining an employee's status *vis-à-vis* the employer's liability for claims arising under La.R.S. 23:631.

In *Hughes v. Goodreau*, 01-1207, p. 7 (La.App. 1 Cir. 12/31/02); 836 So.2d 649, 656, *writ denied*, 03-0232 (La. 4/21/03), 841So.2d 793, the court explained "[i]t is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, *the right to do so exists*." The trial court concluded that the relationship between Mr. Gordon and Dr. Hurlston was one of principal-independent contractor and not one of employer-employee. We find this conclusion to be supported by the record. The agreement between Mr. Gordon and Dr. Hurlston is entitled "Independent Contractor's

4

Agreement." Mr. Gordon was hired by Dr. Hurlston to perform a specific task as a licensed CRNA. Dr. Hurlston did not control or direct the manner in which Mr. Gordon provided anesthetic to patients. The contract also allowed Mr. Gordon to provide CRNA services to companies other than Dr. Hurlston. Dr. Hurlston paid Mr. Gordon a flat rate per month without taking any deductions from that monthly compensation rate. Maintaining his nurse anesthetist license was Mr. Gordon's responsibility, not Dr. Hurlston's. Further, although Mr. Gordon authorized Dr. Hurlston to bill for his services, he had the right to conduct his own billing. Mr. Gordon *chose* to have Dr. Hurlston do the billing. Moreover, Dr. Hurlston did not supply Mr. Gordon with the equipment and materials necessary for Mr. Gordon to provide his services. The record shows clearly that Dr. Hurlston did not have the right to supervise and control Mr. Gordon's work. Thus, we find no manifest error in the trial court's finding that Mr. Gordon was an independent contractor.

### Past Due Wages/Penalties/Attorney Fees

Mr. Gordon asserts that, because Dr. Hurlston failed to pay him for services he rendered during the pay period prior to his resignation, the trial court should have awarded him past due wages, penalties, and attorney fees. On the other hand, Dr. Hurlston argues that prior to the time that payment for Mr. Gordon's CRNA services became due, he discovered that Mr. Gordon did not possess a valid CRNA license. Therefore, the services performed by Mr. Gordon during the pay period prior to his withdrawal from the employment contract were performed without a license. Because Mr. Gordon performed those services without a license, Dr. Hurlston contends that he is unable to bill for those services and should not have to pay Mr. Gordon for them.

5

There is precedent in this circuit holding that the failure of a licensed contractor to maintain a license does not relieve the principal from an obligation to provide payment for services rendered. *See Hagberg v. John Bailey Contractor,* 435 So.2d 580 (La.App. 3 Cir. 1983), *writ denied,* 444 So.2d 1245 (La.1984). We find that there is a clear distinction between the prior case law addressing licencing of general contractors and the particular facts of this case. The majority of cases addressing contractor licencing deal specifically with general contractor licensing and construction work. In the present matter, we are dealing with the very different situation of a highly specialized independent contractor working in the medical profession. The licensing in question in the present matter is not independent contractor licensing, but rather licensing of a medical specialist, presenting a somewhat unique public safety concern.

There is a clear distinction between the purposes for licensing general contractors such as construction workers and licencing specialized medical professionals such as CRNAs. Medical professionals, through the very jobs they perform, are directly responsible for the health, safety, and welfare of the people they treat. In such a sensitive profession as this, the importance of ensuring proper training through licensing procedures takes on a high level of importance.

In addition to this added concern for the safety and welfare of the public, the independent contractor agreement between Mr. Gordon and Dr. Hurlston in this instance clearly indicated by its terms that Mr. Gordon was solely responsible for obtaining and maintaining the required licencing for his certification as a CRNA. According to the contract agreement between the parties, Mr. Gordan's properly licensed status was a material term of the principal-independent contractor agreement. The Independent Contractor's Agreement provides, in pertinent part:

6

This agreement in made to be effective as of July 1, 1999 to record the understanding between **Stanley R. Gordon, Certified Registered Nurse Anesthetist, (CRNA),** and **Glen D. Hurlston, M.D., a Professional Medical Corporation (Corporation),** for the provision of anesthesia services to patients in Leesville, Louisiana and surrounding areas.

**CRNA agrees**:
a.    to furnish the corporation with the full time services of a certified registered nurse anesthetist (CRNA) duly licensed to practice in the State of Louisiana.
b.    to furnish to the corporation proof of Medical Malpractice Insurance un the minimum amount required by current Louisiana law and proof of participation in the Louisiana Patient's Compensation Fund. If applicable, anesthetist shall comply with the Louisiana Workmen's Compensation Law.
c.    to fulfill such continuing education requirements necessary to maintain licensure.

(Emphasis in original).

We agree with the trial court as to its finding that Mr. Gordon was not an employee of Dr. Hurlston, and, for the reasons stated above and under the clear terms of the Independent Contractor's Agreement between the parties, we affirm the trial court's denial of Mr. Gordon's demand for payment of past due wages for CRNA services he provided on behalf of Dr. Hurlston.

Louisiana law does not allow an award of attorney fees, except where authorized by statute or contract. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756 (La.1985). Since Mr. Gordon's situation does not fall within the purview of La.R.S. 23:631-632, which provides for the payment of attorney fees for the prevailing employee, and he has not presented any other statutory or contractual authority for an award of attorney fees in the instant lawsuit, the award of legal fees is denied. We find likewise with respect to Mr. Gordon's request for penalties.

***Dr. Hurlston's Reconventional Demand***

In his reconventional demand, Dr. Hurlston seeks damages for the breach of the employment contract due to Mr. Gordon's failure to maintain his CRNA license. Mr. Gordon's temporary nurse anesthetist license expired on February 15, 2000, yet he continued to provide CRNA services for Dr. Hurlston until March 20, 2001. Dr. Hurlston contends he is entitled to reimbursement from Mr. Gordon for the amount of money he billed various patients and insurers for the services Mr. Gordon provided while not licensed. Dr. Hurlston claims he will have to reimburse or not bill those patients and insurers the amounts they paid him for CRNA services. Dr. Hurlston contends that one insurer, Tri-Care, has already recovered some of what it paid to Dr. Hurlston for CRNA services due to Mr. Gordon's failure to maintain his license. Dr. Hurlston also claims that he decided not to bill other patients/insurers after he learned Mr. Gordon was not licensed when he provided CRNA services.

Dr. Hurlston requested reimbursement in excess of $200,000.00. Mr. Charles Enright of Southwest Louisiana Administrative Services, a company that provides practice management services for physicians, and that provided this service for Dr. Hurlston, testified on behalf of Dr. Hurlston regarding the reconventional demand. Mr. Enright testified that Dr. Hurlston did not bill for $19,305.00 in services after learning that Mr. Gordon did not have the proper license. He further testified that the amount of payments made to Dr. Hurlston for the period of time that Mr. Gordon was unlicensed totaled $265,016.24. The trial court found that $265,016.24 was the potential amount of reimbursement that Dr. Hurlston would have to make. Mr. Enright also testified that, as of the date of trial, the only insurer who requested reimbursement was Tri-Care, which had already been reimbursed $20,854.99. Tri-Care has indicated they will seek an additional sum of $13,194.56 for a total amount of $34,049.55. From Mr. Enright's testimony, the trial court concluded that some of

the reimbursement amount requested by Dr. Hurlston was speculative and therefore awarded Dr. Hurlston $53,354.55, the total of the amount Tri-Care had already been reimbursed ($20,854.99), the additional amount Tri-Care has stated they intend to seek ($13,194.56), and the amount Dr. Hurlston did not bill ($19,305.00).

We agree with the trial court's conclusion that Dr. Hurlston is entitled to reimbursement due to Mr. Gordon's failure to maintain his nurse anesthetist license and affirm the trial court's award of $53,354.55.

### *Attorney Fees/Dr. Hurlston*

The trial court awarded Dr. Hurlston $2,500.00 in attorney fees. However, the employment contract between Mr. Gordon and Dr. Hurlston does not provide for the payment of attorney fees should a dispute as to the agreement arise. Further, there is no statute authorizing the payment of attorney fees under the circumstances presented in this case. Therefore, we find that the trial court erred in awarding Dr. Hurlston attorney fees.

### DECREE

For the above reasons we affirm the trial court's conclusion as to Mr. Gordon's liability on Dr. Hurlston's reconventional demand. We further affirm the trial court's judgment finding that Mr. Gordon was an independent contractor of Dr. Hurlston and not entitled to the benefits of La.R.S. 23:631-632. We further reverse the judgment of the trial court with respect to its award of attorney fees to Dr. Hurlston as there was no contractual agreement or statutory provision authorizing such an award. It is further ordered that the assessment of costs in the trial court is affirmed. Finally, it is ordered that all costs of this appeal are to be borne by Stanley Richard Gordon.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

STANLEY RICHARD GORDON

VERSUS

GLEN HURLSTON, M.D.

THIBODEAUX, J., dissenting in part.

The majority affirms the trial court on Dr. Hurlston's reconventional demand of $53,354.55 and affirms the trial court's denial of Mr. Gordon's request for past due wages. I disagree on these two issues.

The plaintiff in *Hagberg v. John Bailey Contractor*, 435 So.2d 580 (La.App. 3 Cir. 1983), *writ denied*, 444 So.2d 1245 (La.1984), sought payment for work it did in connection with rejuvenating and resurfacing streets in Lake Arthur, Louisiana. The general contractor, with which the sub-contractor company worked on the project, refused to pay because it found out that the sub-contractor failed to maintain its contractor license and was not licensed at the time the road work was done. However, at the time the two contractors entered into the agreement to upgrade the streets, the sub-contractor was properly licensed to do the work.

After noting that the purpose of the state's contractor's licensing requirement "is [for] the protection of general public 'against the incompetent, inexperienced, unlawful and fraudulent acts of contractors,'" this court held that this case "does not present a situation of the type within the intended scope of protection of the licensing statute." *Hagberg*, 435 So.2d at 586. We further held "[w]here

incompetency or inexperience or fraudulence is not involved, the licensing statute can not be invoked to avoid payment of valid charges." *Id*. Likewise, in the present case, Dr. Hurlston does not allege that Mr. Gordon was incompetent in providing nurse anesthetist services, nor does he allege that Mr. Gordon was inexperienced or acted fraudulently. Mr. Gordon testified that he was unaware that his temporary license had expired and there is no evidence in the record to show that Mr. Gordon did not perform his duties competently. He certainly was experienced in that he had worked for Dr. Hurlston since June 30, 1999.

The majority seeks to distinguish *Hagberg* by observing that "[i]n such a sensitive profession [medical] as this, the importance of ensuring proper training through licensing procedures takes on a high level of importance" because "[m]edical professionals . . . are directly responsible for the health, safety, and welfare of the people they treat." Indisputably, this is true. However, isn't a contractor which is in charge of repairing streets also responsible for the safety and welfare of the citizens which use those streets? Furthermore, there is not one allegation of Mr. Gordon's incompetence, inexperience, or fraudulent conduct. The majority's attempt to distinguish *Hagberg* is unpersuasive. Mr. Gordon's failure to maintain his nurse anesthetist license cannot be invoked by Dr. Hurlston to avoid payment of valid charges for work done by Mr. Gordon. That Mr. Gordon was not licensed is a matter to be dealt with by the appropriate state licensing authority. Dr. Hurlston has collected for these services and Tri-Care or an insurer may or may not seek reimbursement for these charges which have been collected by Dr. Hurlston. What if reimbursement is not sought? Does Dr. Hurlston get the benefit of the services performed by Mr. Gordon but Mr. Gordon does not?

Tri-Care has only indicated it *may* seek reimbursement from Dr. Hurlston for $13,194.56. Dr. Hurlston has not reimbursed Tri-Care for that amount. He,

therefore, has not shown a loss of $13,194.56. An intention by Tri-Care to seek reimbursement is too speculative and should not be a basis for recovery. The majority has effectively lowered the standard for a breach of contract recovery based on an *intent* to recover. That is improper. I, therefore, would amend the trial court's judgment to award Dr. Hurlston $40,159.99 on his reconventional demand.

For the foregoing reasons, I respectfully dissent.