# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 08-791

**BILLY KIBODEAUX**

**VERSUS**

**PROGRESSIVE INS. CO., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-5167
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Frederick L. Cappel**
**Raggio, Cappel, Chozen & Berniard**
**1011 Lakeshore Dr., 5th Floor**
**Lake Charles, LA 70601**
**(337) 436-9481**
**Counsel for Defendants/Appellants:**
**Calcasieu Parish Police Jury**
**St. Paul Fire & Marine Ins. Co.**

**Mesonie Terrence Halley, Jr.**
**Attorney at Law**
**One Lakeshore Dr., Suite 1710**
**Lake Charles, LA 70626**
**(337) 497-0039**
**Counsel for Defendant/Appellee:**
**Allstate Insurance Company**

**Thomas John Gayle**
**Ranier, Gayle & Elliot**
**1419 Ryan St.**
**Lake Charles, LA 70601**
**(337) 494-7171**
**Counsel for Plaintiff/Appellee:**
**Billy Kibodeaux**

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

This appeal arises from a judgement by the Fourteenth Judicial District Court, finding that Murphy Guidry (hereinafter "Guidry") was an employee of the Calcasieu Parish Police Jury (hereinafter "CPPJ"). On May 14, 2003, Guidry was involved in an automobile accident with Claude Eagleson (hereinafter "Eagleson"), purportedly while Guidry was in the course and scope of his employment with the CPPJ. Whether the CPPJ is liable for Guidry's tortious conduct under La.Civ.Code art. 2320[1] will turn on the question of whether, when conducting electrical inspections for Calcasieu Parish, Guidry was an employee or an independent contractor for the CPPJ.

The CPPJ first hired Guidry as a part-time electrical inspector in the mid-1970s. On May 8, 1989, Guidry signed a, Contract for Electrical Inspection Services, with the CPPJ. The contract, which purports to be one for an independent contractor, is the contract under which Guidry was laboring at the time of the accident which gave rise to this litigation.

**ASSIGNMENT OF ERROR:**

1.   Did the trial court err in finding that Guidry was an employee of the CPPJ and not an independent contractor?

**STANDARD OF REVIEW AND DISPOSITION OPINION:**

---

[1] Louisiana Civil Code Article 2320 - Masters and employers are answerable for the damage occassioned by their servants and overseers, in the exercise of the functions in which they are employed.

Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under the superintendence.

In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses.*

The trial court's factual finding that Guidry was an employee is reviewed under the manifest error/clearly wrong standard. *Guillard v. Copelands*, 07-867 (La.App. 3Cir.12/5/07), 971 So.2d 451. (citing *Hall v. Folger Coffee Co.*, 03-1734 (La.4/14/04), 874 So.2d 90). The reviewing court must always keep in mind that, " if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Lasyone v. Kansas City Southern Railroad*, 786 So.2d 682, 688 (La.2001). After reviewing the facts, we find that the trial court's ruling was "reasonable in light of the record reviewed in its entirety." *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). We affirm.

**EMPLOYMENT CONTRACT:**

In this case, there is no dispute between the parties as to the fact that an employment contract existed. "Therefore, once it is determined that an employment contract exists, for purposes of the employer's vicarious liability in tort, it is necessary to determine what *type* of employment contract exists, i.e., whether the employee is a mere servant or an independent contractor." *Hughes v. Goodreau*, 01-2107, p.5 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 656, *writ denied* 03-232 (La. 4/21/03), 841 So.2d 793 (emphasis original). Although the parties may have designated Guidry as an independent contractor in the contract, this designation is not controlling on the rights of third persons. Rather, the rights of third persons are determined by the substance of the contractual relationship, rather than the title of it. *Hughes v. Goodreau* at 659 (citing *Monsato Co. v. St. Charles Parish School Bd.*, 94-2145, pp.5-6 (La. 2/20/95), 650 So.2d 753, 756-57). The legal relationship between

Guidry and the CPPJ will be determined both, "from the contract between them and from their intentions in establishing and carrying out that relationship as manifested in its performance and the surrounding circumstances." *Hickman v. S. Pac. Transport Co.*, 262 La. 102,116 (La.1972).

We note that the difference between an employee and an independent contractor is a factual determination to be decided on a case-by-case basis. *Tower Credit, Inc. v. Carpenter* 01-2875 (La. 9/4/02), 825 So.2d 1125. A servant is someone who offers his personal services for a price and must submit to the control of his physical conduct as well as of his time. *Hughes*, 836 So.2d 649. On the contrary, "[i]t is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in the case the agreement is not fulfilled in accordance with its covenants." *Hickman,* 262 So.2d. at 390. Both servant and independent contractor are engaged in the performance of an employment for the benefit of the employer. However, it is the independent contractor's freedom from control which takes him out of the class of a servant and thus relieves the employer from liability. *Hickman* 262 So.2d 385.

**INDEPENDENT CONTRACTOR ANALYSIS:**

In determining whether a worker is an employee or an independent contractor, the working relationship must meet the requirements of the following five-part test:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a

> specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Guillard*, 971 So.2d at 455. Part one of the test is satisfied, because, as stated above, there was a valid contract between the parties.

Parts two and three of the test are best analyzed together, in this case. Part two requires work of an independent nature and allows for completion through non-exclusive means. Part three of the test focuses on the degree of control exercised by the principal and calls for a specific piecework as a unit. It is in Parts two and three of the five-part test that Appellee's argument that Guidry should be considered an independent contractor begins to fail.

We know, for example, that Guidry was not called on to complete a specific piecework, such as the inspection of one particular thing or the creation of one particular thing, as a unit. Rather, Guidry provided services to the CPPJ, performing a multitude of electrical inspections and completing several other ancillary tasks that he was assigned. Furthermore, Guidry's contract provides a fair amount of detail as to how Guidry must complete his work. The contract sets out the extent to which the "Division," had control and supervision over Guidry's day-to-day tasks, requiring that he, "inspect in accord with all rules, regulations and instructions adopted by the Division, all buildings pointed out to him and assigned to him," and that he "shall be available during reasonable hours to perform said inspections and upon completing same shall report . . .to the Division." These controls go beyond the *result* of the services to be rendered. The end result would be inspected electrical wires.

Guidry was not left to his own devices in performing these inspections. On the

contrary, he was given instructions on how he must perform his work and was required to report back. Some of CPPJ's instructions were fairly detailed and included tasks outside of electrical inspection itself, such as the assigning of municipal numbers to buildings Guidry inspected. The assignment of these numbers was essential to the function of the Parish's 911 system, the aspects of which are reasonably removed from electrical inspections themselves. Furthermore, Guidry was also given tools with which to work, such as: a two-way radio, an identification badge, a removable decal for the door or doors of his truck, and inspection cards that inform owners of the result of the inspection. Guidry would most likely not have been allowed to substitute his own badge or his own inspection cards, in place of those provided by the Parish. Thus, these were exclusive means for accomplishing the work, rather than the non-exclusive means required by part two of the independent contractor test.

Part four of the test calls for a specific price for an *overall* undertaking. However, no such price could have been agreed upon in Guidry's situation. Guidry was first hired on a part-time basis and then began working almost exclusively for the CPPJ. Throughout his years of service as an electrical inspector, it is likely that Guidry's rate of pay changed several times for services that were ongoing, rather than there having been a set price for some overall undertaking. In fact, Guidry was paid on the same bi-monthly schedule as other Parish employees; he was not allowed to bill for his own services.[2]

Finally, the Louisiana Supreme Court has recognized that:

---

[2]This court, in *Gordon v. Hurlston*, found that a nurse was an independent contractor where, among other things, the nurse had the right to conduct his own billing. *Gordon v. Hurlston*, 03-112, (La.App. 3 Cir. 9/10/03), 854 So.2d 469.

> [T]he most telling facts defining the relationship as master-servant (rather than that of employer-independent contractor) were that the contract between the parties could be terminated by either party upon written notice to the other without incurring liability for breach; and that the employer had the right to terminate the relationship at any time when the employee's services became unsatisfactory to the employer.

*Hughes*, 836 So.2d at 658-59. The contract between Guidry and the CPPJ states that it, "is terminable at will by either party." In *Hickman*, our supreme court stated that the right to terminate the employment relationship at will is, "antagonistic to the independent contractor relationship." *Hickman* 262 So.2d 385, 391.

It is clear that Guidry's employment relationship with the CPPJ does not meet the criteria for independent contractor status. Having applied the foregoing principles to the facts before us, we find that the trial court's determination that Guidry was an employee of the CPPJ is entirely reasonable, and thus will not be disturbed by this court.

**CONCLUSION:**

For the above-stated reasons, we affirm the decision of the trial court in all respects. All costs are to be assessed equally to each appellant.

**AFFIRMED.**

_____

6