STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0457

MICHAEL ELLIS

VERSUS

CIRCLE L TRUCKING, L.L.C. AND
EMPLOYERS MUTUAL CASUALTY COMPANY

Judgment Rendered: DEC 3 0 2021

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 676118

Honorable Ronald R. Johnson, Judge Presiding

* * * * * *

John Benjamin Bireley
Noah M. Wexler
Houston, Texas

Counsel for Plaintiff/Appellant
Michael Ellis

A.M. "Tony" Clayton
Michael P. Fruge'
Richard J. Ward, III
Michael C. Hendry
Randall "Blue" Gay, Jr.
Brilliant P. Clayton
Port Allen, Louisiana

Thomas M. Flanagan
Anders F. Holmgren
New Orleans, Louisiana

Joseph E. Bearden, III
John G. Yadamec
Olivia C. Mallary
Metairie, Louisiana

Counsel for Defendant/Appellee
Employers Mutual Casualty Company

* * * * * *

BEFORE: McCLENDON, WELCH AND THERIOT, JJ.

**McCLENDON, J.**

In this personal injury case arising out of a single-vehicle accident, the plaintiff appeals the trial court's judgment that granted the insurance company's motion for summary judgment and dismissed the plaintiff's claims with prejudice. We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 14, 2018, Michael Ellis filed a Petition for Damages against Circle L Trucking, L.L.C. (Circle L) and its liability insurer, Employers Mutual Casualty Company (EMC).[1] In his petition, Mr. Ellis alleged that on September 27, 2018, he was a passenger in an 18-wheeler truck driven by John Landry, Circle L's employee, when Mr. Landry failed to control his speed, causing the 18-wheeler to hydroplane and roll off the road into a ditch. As a result, Mr. Ellis asserted that he sustained serious injury to his neck, back, and other parts of his body. Mr. Ellis sought damages based on theories of negligence, *respondeat superior*, and agency.

On March 12, 2020, EMC filed a motion for summary judgment, averring that Mr. Ellis was an employee of Circle L and that, as an employee of Circle L, all of his claims against EMC were unambiguously excluded from coverage by the plain language of EMC's "Business Auto" policy of insurance, which was in effect on the date of the accident. According to EMC, there were no genuine issues of material fact, and EMC was entitled to summary judgment as a matter of law.

In opposition to the motion, Mr. Ellis argued that he was required to sign a contract with Circle L stating that he was an independent contractor and not an employee. Thus, he maintained, his employment status was a factual determination better made by the factfinder rather than in a motion for summary judgment.

Following a hearing, the trial court agreed with EMC and concluded that Mr. Ellis was an employee of Circle L. Therefore, the trial court found that EMC's business automobile insurance policy excluded insurance coverage for Mr. Ellis's claims, and it granted EMC's motion for summary judgment and dismissed Mr. Ellis's claims with prejudice. The trial court signed a judgment on December 23, 2020, and Mr. Ellis

---

[1] Circle L was in the business of delivering portable buildings.

2

appealed. On appeal, Mr. Ellis argues that the trial court erred in finding an absence of disputed material facts and in granting the summary judgment.

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969, and the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art 966A(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966A(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Prejean v. McMillan**, 18-0919 (La.App. 1 Cir. 2/28/19), 274 So.3d 575, 578.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Hines v. Garrett**, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Hines**, 876 So.2d at 765-66. A fact is material when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 19-0577 (La.App. 1 Cir. 2/21/20), 298 So.3d 191, 195, writ denied, 20-00480 (La. 6/22/20), 297 So. 3d 773. Moreover, ultimate or conclusory facts and conclusions of law are not to be utilized on a summary judgment motion. **Thompson v. South Central Bell Tel. Co.**, 411 So.2d 26, 28 (La. 1982); **Labarre v. Occidental Chemical Company and Texas Brine Company, LLC**, 17-1370 (La.App. 1 Cir. 6/4/18), 251 So.3d 1092, 1102, writ denied, 18-1380 (La. 12/3/18), 257 So.3d 196.

The burden of proof rests with the mover. LSA-C.C.P. art. 966D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is

3

before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966D(1).

The interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. **Womack v. Mar Jay Productions, L.L.C.**, 19-0712 (La.App. 1 Cir. 2/21/20), 298 So.3d 745, 750, writ denied, 20-00424 (La. 6/12/20), 307 So.3d 1032. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. **Miller v. Superior Shipyard and Fabrication, Inc.**, 01-2683 (La.App. 1 Cir. 11/8/02), 836 So.2d 200, 203. However, an insurer has the burden of proving that a loss falls within a policy exclusion. Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed against the insurer, and any ambiguity in the exclusion is construed in favor of the insured. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. **Savoie v. Anco Insulations, Inc.**, 20-0584 (La.App. 1 Cir. 4/9/21), 322 So.3d 1264, 1266-67. Unless a policy conflicts with statutory provisions or public policy, it may limit

4

an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. **Prejean**, 274 So.3d at 578-79.

In its motion for summary judgment, EMC referred to the following policy exclusions in its Commercial Auto Policy – Business Auto:

### SECTION II – COVERED AUTOS LIABILITY COVERAGE

\* \* \*

### B. Exclusions

This insurance does not apply to any of the following:

\* \* \*

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or
(2) Performing the duties related to the conduct of the "insured's" business;

\* \* \*

### 5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business....

It is undisputed that Circle L was an "insured" under EMC's policy. However, in his appeal, Mr. Ellis maintains that he was an independent contractor, rather than an employee, as evidenced by the independent contractor agreement he signed with Circle L, and not excluded from coverage for his injuries under EMC's insurance policy. Therefore, the central issue in this appeal is the nature of the relationship between Mr. Ellis and Circle L.

5

In support of its motion for summary judgment, EMC submitted the affidavit of EMC's representative with a copy of the insurance policy at issue attached, the deposition Mr. Ellis, and the deposition of Circle L, through its representative, Floyd Landry.[2] Mr. Ellis testified that he began working for Circle L as a helper approximately two weeks before the accident at issue. He explained that his job as a helper was to help load portable buildings onto a trailer and strap them down and to help unload them from the trailer and block them to make sure they were level. Mr. Ellis stated that he did not supply his own tools. He also testified that he worked Monday through Friday and was paid $100.00 per day. Mr. Ellis stated that a typical day was approximately eight to nine hours during the time he worked, and he believed that he would be fired if he did not show up for work.

Mr. Ellis also testified that he would report to John Landry when he arrived at Circle L, who would tell him what to do for that day. Mr. Ellis stated that he also took direction from John Landry's son, Floyd, who was a driver, and with whom he rode for the two weeks before the accident. Mr. Ellis testified that on the day of the accident, he and John Landry were returning from Mississippi after delivering two portable buildings when the accident occurred. Mr. Ellis believed that he was an employee of Circle L.

Floyd Landry, who testified for Circle L, stated that Mr. Ellis was a contract laborer and not an employee of Circle L.[3] Mr. Landry also testified that both he and Mr. Ellis had signed independent contractor agreements and that neither were employees. He also added that Circle L had no employees because everyone at Circle L, including

---

[2] We note that the affidavit of EMC's representative attaching a copy of the insurance policy was not signed and that EMC attached the deposition of Circle L's representative to its Reply Memorandum. With regard to the purported affidavit, Louisiana Code of Civil Procedure articles 966 and 967 do not permit a party to use unsworn and unverified documents as summary judgment evidence, and attaching such documents to a motion for summary judgment does not transform them into competent summary judgment evidence. **Tilley v. City of Walker**, 18-1587 (La.App. 1 Cir. 12/30/19), 294 So.3d 496, 502 n.2; **Wood v. Allstate Property and Casualty Insurance**, 18-0404 (La.App. 1 Cir. 12/13/18), 2018 WL 6597109, at *1 n.3 (unpublished). Additionally, the court may consider only those documents filed in support of or in opposition to the motion for summary judgment and not documents attached to a reply memorandum. See LSA-C.C.P. art. 966D(2). Nevertheless, the trial court must consider any documents to which there is no objection. LSA-C.C.P. art. 966D(2). The record herein contains no objection to the introduction of either the affidavit of the EMC representative or the deposition of Circle L's representative, and the trial court admitted both into evidence. Thus, the trial court was constrained to consider same, as we have done in our *de novo* review.

[3] The corporate deposition of Circle L was taken on August 7, 2020. John Landry, who was the owner of Circle L, is deceased, and his son, Floyd Landry, testified that Circle L ceased doing business in March 2020.

6

his father, John Landry, signed independent contractor agreements. Additionally, Mr. Landry stated that a helper was not bound to work any number of hours or days per week for Circle L and was free to accept or decline work on any given day it was offered. However, he testified that if a helper did not do what was asked of him, he would be terminated for not doing his job.

With regard to Mr. Ellis, Mr. Landry testified that Mr. Ellis was informed as to the time to show up at Circle L to start work either through a text message or verbally by someone at Circle L. Additionally, Mr. Landry testified that Circle L provided the necessary tools and equipment to Mr. Ellis for his job and that Mr. Ellis received instructions on how to perform his job by riding with the driver on deliveries. Mr. Landry stated that he showed Mr. Ellis "the method of what the job required" and how Circle L wanted it done. He also stated that Mr. Ellis had no supervisory role at Circle L.

In opposition to the motion for summary judgment, Mr. Ellis submitted his deposition testimony, as well as the independent contractor agreement signed by Circle L and Mr. Ellis on August 1, 2018.[4] Among its provisions, the contract identified Mr. Ellis as "an independent contractor," specifically providing that an independent contractor "shall not be deemed" an employee of Circle L. The agreement also provided that Circle L would pay Mr. Ellis a fixed sum per day and would not withhold taxes, provide any employee benefits, or extend workers' compensation coverage to Mr. Ellis. The contract further stated that either party could terminate the agreement with reasonable cause.

The Louisiana Supreme Court in **Hickman v. Southern Pacific Transport Co.,** 262 La. 102, 262 So.2d 385, 390 (La. 1972), explained that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The supreme court further stated that when, as here, the issue is whether the worker is an independent contractor or an employee, the court should consider whether (1) there is a valid contract between the

---

[4] Additionally, Mr. Ellis submitted a copy of the police report, copies of certain emails regarding the taking of the corporate deposition, and the affidavit of Mr. Ellis's counsel.

parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. **Hickman**, 262 So.2d at 390-91. See also **Tower Credit, Inc. v. Carpenter**, 01-2875 (La. 9/4/02), 825 So.2d 1125, 1129.

The principal test in determining whether someone is an independent contractor is the degree of control over the work reserved by the employer. **Hickman**, 262 So.2d at 391. It is not the supervision and control actually exercised that is significant, but whether, from the nature of the relationship, the right to exercise such control exists. **Collins v. State Through Department of Natural Resources**, 16-1195 (La.App. 1 Cir. 4/28/17), 220 So.3d 92, 97, writ denied, 17-0879 (La. 9/29/17), 227 So.3d 289. Yet, while the essence of an employer-employee relationship is the right to control, no one factor is controlling, and the court should consider the totality of the circumstances in determining whether an employer-employee relationship exists. **Collins**, 220 So.3d at 97; **Fonseca v. City Air of Louisiana, LLC**, 15-1848 (La.App. 1 Cir. 6/3/16), 196 So.3d 82, 87.

With regard to the first **Hickman** factor, Mr. Ellis argues that the parties' intent was to enter into an independent contractor arrangement, as evidenced by his signing of the of the independent contractor agreement. EMC does not deny the existence of the agreement, but questions its validity and argues that the designation was made to avoid workers' compensation responsibility and circumvent the law. EMC contends that, in fact, everyone at Circle L, including the "person in charge," John Landry, was required to execute the independent contractor agreement.

The second and third **Hickman** factors are generally discussed together and refer to the methods used to complete the project, the non-exclusiveness of those methods, and the degree of control exercised by the principal. **Simon v. Farm**

8

**Bureau Insurance Co.**, 19-278 (La.App. 3 Cir. 3/4/20), 297 So.3d 147, 151, writ denied, 20-00438 (La. 6/12/20), ___ So.3d ___. Again, the most important inquiry to be made in determining the relationship between the parties is whether the principal reserved the right to control the work. **Hickman**, 262 So.2d at 391. Although Mr. Landry testified that a helper was not required to work any number of hours or days per week for Circle L and that he was free to accept or decline work when it was offered, Mr. Ellis's own testimony, submitted by both parties, as well as Mr. Landry's testimony for Circle L, show that Mr. Ellis had very limited, if any, freedom of action in accepting or performing the work required of him. Mr. Ellis asserted that everyone else at Circle L was his "boss," and he did what he was told to do. These assertions were not contradicted by the testimony of Mr. Landry for Circle L. Mr. Ellis would get instructions as to what time to show up for work, was trained on the job as to how to perform, and was not free to carry out the work by his own methods. Additionally, Circle L controlled the time for the performance of a pickup or delivery, as well as the order in which the pickups and deliveries were made. Circle L also supplied all of the necessary tools and equipment, and Mr. Ellis never brought anything to the job to use.

The fourth **Hickman** factor looks to whether there was a specific price for the overall undertaking. Initially, we note that there was no agreement to do a specific project or overall undertaking for a specific price. Mr. Ellis performed the specific work he was assigned. Additionally, Mr. Ellis was paid a flat rate of $100.00 per day as a helper, regardless of the number of hours he worked and regardless of the nature or the amount of the work completed.

The final factor to consider is whether the work to be done was for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. **Hickman**, 262 So.2d at 391. The independent contractor agreement did not provide for any duration of work or specific time, and it only provided when the work relationship began. Although the contract provided for termination with reasonable cause by either party, Mr. Landry testified that a helper

9

could choose not to work at any given time and that Circle L could dismiss a helper who failed to do the job asked of him without any consequences.[5]

The evidence presented establishes that Mr. Ellis's work was not of an independent nature and lacked the right of supervision and control by Mr. Ellis. Further, the agreement did not call for specific piecework to be performed according to Mr. Ellis's own methods for a specific price or for a specific time. This lack of the independent nature of the work and the lack of the right of control and supervision by Mr. Ellis is undisputed. The testimony of both Mr. Ellis and Circle L establish that Mr. Ellis did not control how the work assigned to him was to be done. He was a helper and had no independent responsibility. Further, the contract could have been discontinued with cause by either side without consequences. Thus, despite the existence of the independent contractor agreement, the uncontested facts establish that Mr. Ellis did not have an independent contractor relationship with Circle L, but was working as an employee of Circle L. Therefore, we find that EMC established the absence of factual support for Mr. Ellis's claim that he was an independent contractor, and Mr. Ellis failed to produce factual support sufficient to establish the existence of a genuine issue of material fact.

Consequently, EMC's insurance policy must be enforced as written. Because the insurance policy specifically excludes coverage for bodily injury to an "employee" of the "insured," summary judgment on the basis of the "employee" exclusions was proper.[6]

## CONCLUSION

The December 23, 2020 judgment of the trial court, granting summary judgment in favor of Employers Mutual Casualty Company and dismissing Michael Ellis's claims with prejudice, is affirmed. Costs of this appeal are assessed to Michael Ellis.

**AFFIRMED.**

---

[5] It is undisputed that Mr. Ellis was terminated after the accident. Mr. Landry testified that Mr. Ellis was fired for stealing, whereas Mr. Ellis believed he was fired because he was hurt and the accusation of stealing "was an excuse."

[6] Having found that the "employee" exclusions preclude recovery by Mr. Ellis, we pretermit discussion of EMC's argument that the workers' compensation exclusion in EMC's insurance policy also applies.

10

MICHAEL ELLIS

VERSUS

CIRCLE L TRUCKING, L.L.C.
AND EMPLOYERS MUTUAL
CASUALTY COMPANY

NO. 2021 CA 0457

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

WELCH, J., concurring.

While I agree with the majority's analysis of the factors set forth in Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385, 390 (La. 1972) and its conclusion that Mr. Ellis did not have an independent contractor relationship with Circle L, I write separately to point out that even if Mr. Ellis was an independent contractor, Mr. Ellis's claims against Circle L would be covered under workers' compensation pursuant to La. R.S. 23:1021(7) because "a substantial part of [his] work time ... [was] spent in manual labor by him carrying out the terms of the contract." Therefore, the insurance policy exclusion applies regardless of whether Mr. Ellis was an employee or an independent contractor and summary judgment dismissing Mr. Ellis's claims was proper.

Thus, I respectfully concur.